Filed 3/12/25  P. v. Garcia CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEJANDRO GARCIA,<br><br>    Defendant and Appellant. | H051508<br>(Santa Clara County<br>Super. Ct. No. C2213091) |

In 2023, a jury convicted defendant Alejandro Garcia of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] and petty theft (§ 484, subd. (a)).  The trial court sentenced him to a term of four years in state prison.  Appointed counsel for Garcia filed an opening brief which provides the procedural and factual background of the case but raises no legal challenge to the disposition.  Counsel asks this court to conduct an independent review of the record to determine whether there are any arguable issues. (See *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Garcia was advised of the right to file written arguments on his own behalf, and he has submitted a letter in which he raises several concerns.  Finding no arguable error that would result in a disposition more favorable to Garcia, we affirm the judgment.

---

[1] Unspecified statutory references are to the Penal Code.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A. Procedural background

On November 2, 2022, the Santa Clara County District Attorney filed an information charging Garcia with felony assault with a deadly weapon (§ 245, subd. (a)(1), count 1); felony second degree robbery (§ 211, count 2); misdemeanor battery (§ 243, subd. (a), count 3); and misdemeanor petty theft (§ 484, subd. (a), count 4). The information further alleged that Garcia has suffered a prior strike conviction (§§ 667.5, subds. (c); 1170.12, subd. (b)(1)).

On January 3, 2023, the trial court declared a doubt as to Garcia's competency to stand trial and appointed a doctor to evaluate him. Following a competency examination, the evaluating psychiatrist filed a report on April 24, 2023, in which she concluded that Garcia was competent to stand trial. The trial court found Garcia competent and reinstated criminal proceedings on April 28, 2023.

On May 10, 2023, Garcia brought a *Marsden*[2] motion for the appointment of substitute counsel. The trial court, after hearing from Garcia and his trial counsel in a closed proceeding, denied the motion.

Following a jury trial, Garcia was convicted on counts 1 and 4.[3] Garcia subsequently waived his right to a jury trial on the prior strike allegation and, after a bench trial on July 19, 2023, the court found true the allegation that Garcia had a prior strike conviction.

On August 11, 2023, the trial court sentenced Garcia to a total term of four years in state prison, consisting of the lower term of two years on count 1 (assault with a deadly weapon), doubled due to the prior strike (§ 1170.12), along with a concurrent term of 364

---

[2] People v. Marsden (1970) 2 Cal.3d 118.

[3] Prior to trial, the trial court granted the district attorney's motion to dismiss counts 2 and 3 due to insufficiency of the evidence.

days on count 2 (petty theft). The court awarded Garcia a total of 641 days of presentence custody credits, consisting of 321 days of custody credits plus 320 days of conduct credits pursuant to section 4019. After finding that Garcia "has a financial inability to pay," the court stayed all fines and waived all fees and assessments.

Garcia timely appealed.

In his letter brief, Garcia raises the following arguments: (1) he contends the "victim lied to the jury the whole time[;]" (2) an "unidentif[ied] man" is shown on the video from the responding officer's body camera "giving 'stabbing motions' … while [the victim] is giving his police report" but Garcia could not "confront this man [at] the trial[;]" (3) the victim used a translator who "added more information to the police officer report that never happen[ed;]" and (4) after Garcia filed a *Marsden* motion, his trial counsel "was upset" and "did not do 100% [] to represent" him at trial.

We address Garcia's claims pursuant to *People v. Kelly* (2006) 40 Cal.4th 106, 120–121.

### B. Factual background

H.S.[4] testified that, on September 25, 2022, he was working at a liquor store with a family friend, T.S. H.S. arrived at the store at around 10:00 p.m. or 10:30 p.m. and, shortly thereafter, he saw Garcia walk into the store and take 13 or 14 miniature bottles of liquor off the counter. Garcia put the bottles into his pocket and tried to leave the store without paying. H.S. confronted Garcia about not paying for the merchandise, but Garcia did not respond and kept "trying to leave [the store]." H.S. said that he was going to call the police but called the store's owner[5] instead. H.S. stepped in between Garcia and the

---

[4] We refer to the victims and witnesses by their initials to protect their privacy interests. (Cal. Rules of Court, rule 8.90(b)(4), (10).)

[5] H.S. consistently referred to the store's owner as "uncle," but confirmed that the owner was a friend of H.S.'s father, not a blood relative.

exit door, holding the phone in his hand. Garcia punched H.S. in the face, grabbed the phone, and threw it aside. H.S. called for T.S. to call the police. Garcia was still trying to hit H.S., so H.S. grabbed Garcia's wrists. Garcia broke free and pulled out a silver knife, approximately six to eight inches in length. H.S. pushed Garcia away and retreated toward a bathroom as Garcia followed him. H.S. locked himself inside the bathroom and only came out after the police arrived.

T.S. testified he was working at the liquor store with H.S. on September 25, 2022. T.S. saw Garcia take a number of miniature bottles of liquor from the store and then saw H.S. trying to keep Garcia from leaving. When Garcia punched H.S., T.S. immediately called 911. T.S. saw H.S. lock the door to the store.[6] Garcia tried to unlock the door, but when he could not do so, he pulled out a knife.

A recording of the 911 call was played for the jury and, in that call, T.S. told the dispatcher that Garcia was beating H.S. T.S. then told the dispatcher that Garcia was attacking H.S. "with a knife." T.S. testified that Garcia tried to stab H.S. but H.S. ran away. According to T.S., the blade was between one and two feet from H.S. when Garcia swung it at him.

As H.S. ran, Garcia chased after him. When H.S. went into the bathroom, Garcia walked back to the front door, picked up the bottles he had taken earlier, put them in his pocket, and ran out.[7]

San Jose Police officer Andy Yciano responded to the 911 call at about 10:40 p.m. on September 25, 2022. When he arrived at the location, Yciano saw Garcia walking

---

[6] After T.S. completed his testimony, H.S. was recalled as a witness and testified that he did not lock the door to the store because he did not have the key on his person.

[7] After Garcia was taken into custody, the police returned the bottles of liquor to the store. According to T.S., the bottles sold for about one dollar apiece.

away from him back toward the front of the store. Garcia ran when Yciano and another officer tried to take him into custody but was eventually apprehended.

San Jose Police officer Curtis Tran also responded to the 911 call and, when he arrived, Garcia was already in custody. Tran observed other officers searching Garcia and saw them remove "[m]aybe 10 to 15" miniature bottles of alcohol from Garcia's pockets. Tran spoke to H.S. in the store about his interactions with Garcia that night and Tran's bodycam footage was played for the jury. During that discussion, H.S. demonstrated what Tran interpreted to be Garcia making a "stabbing motion" and "pointed to his right abdomen where [Garcia] tried to stab him but missed."

San Jose Police officer Jared Peterson arrived at the liquor store at around 10:30 p.m. to 10:40 p.m. on September 25, 2022. Garcia was already in custody, so he walked along the route that Garcia had taken when he fled from Yciano because one of the officers had heard what sounded like an object being thrown during the pursuit. Peterson testified that Garcia did not have a knife on him when he was taken into custody. As Peterson canvassed the area along Garcia's path, he found a silver steak knife on the ground. Peterson showed the knife to H.S. who identified it as the same one that Garcia pulled out that night.

## II. DISCUSSION

In his letter brief, Garcia claims: (1) his Sixth Amendment right of confrontation was violated when Tran's bodycam footage was shown to the jury because an unidentified man can be seen in that video making " 'stabbing motions' " as H.S. is talking to Tran; (2) the person serving as a translator for H.S. and Tran at the liquor store "added more information … that never happen[ed;]" (3) H.S. was lying because Garcia was able to run out of the store even though H.S. "locked the door[;]" and (4) defense counsel provided ineffective assistance because he "was upset" after Garcia brought his *Marsden* motion and "did not do 100% [] to represent" him at trial.

5

We find no merit to any of Garcia's arguments.

A criminal defendant has the right under the California and federal constitutions to confront the witnesses against him. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15.) The Confrontation Clause " 'guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' (*Delaware v. Fensterer* (1985) 474 U.S. 15, 20 [88 L.Ed.2d 15, 106 S.Ct. 292] (*per curiam*).)" (*People v. Wilson* (2008) 44 Cal.4th 758, 794.) "Although we recognize that a criminal defendant has a constitutional right to present all relevant evidence of *significant* probative value in his favor [citations], '[t]his does not mean that an unlimited inquiry may be made into collateral matters; the proffered evidence must have more than "slight-relevancy" to the issues presented.' [Citation.] ' "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." ' " (*People v. Jennings* (1991) 53 Cal.3d 334, 372.)

As to the unidentified man shown on the footage from Tran's bodycam, defense counsel cross-examined Tran about the purported stabbing motion made by that person[8] and whether that person made the motion in question before or after H.S. did. After watching the video, without audio, Tran said that the man was "just holding his hand clenched" but did not make a stabbing motion. Tran also testified that H.S. gestured toward his abdomen to demonstrate where Garcia's stab was directed and that it did not appear to Tran that H.S. was being coached or prompted by anyone else in making that particular gesture. In any event, while a short clip from the bodycam footage was played

---

[8] Tran testified that he did not know this person's name and did not interview him because he was not a witness to the robbery and assault.

in front of the jury during Tran's testimony, that exhibit was not admitted into evidence. Furthermore, T.S. testified that he witnessed Garcia try to stab H.S. and, on the 911 recording, T.S. reported that " '[Garcia]'s attacking with a knife. Hit [H.S.] with a knife. He attacked him with a knife.' "

Turning to the person who served as a translator between Tran and H.S. during their discussion at the liquor store, only a short clip of Tran's bodycam footage was played for the jury, without audio. There is no evidence that Tran was provided with any information from the translator that he did not obtain from H.S. Tran's testimony about his discussion with H.S. aligned with both H.S.'s testimony and T.S.'s testimony about what happened that evening. On cross-examination, Tran testified that he asked H.S. questions and did not question the translator at all. Tran testified on redirect that the "lengthy statement" he obtained from H.S. "with the help of the interpreter on scene" reflected what H.S. "personally experienced that night."

Next, Garcia complains that H.S.'s testimony was not credible because he testified that he locked the door, but Garcia was still able to run out after H.S. retreated to the bathroom. This is not supported by the record. *T.S.* testified that he saw H.S. lock the door, but when H.S. was recalled to the stand, he testified that he did *not* lock the door and could not have done so because he did not have the key.

In his ineffective assistance of counsel argument, Garcia states that counsel failed to represent him, that it was "all self[-]defense … [because] two grow[n] men … locked [him] inside [the store] with them."

The standard for evaluating claims that counsel provided constitutionally ineffective assistance is set forth in *Strickland v. Washington* (1984) 466 U.S. 668, 687–694, which states: "[t]o secure reversal ... upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e.,

7

that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Contrary to Garcia's suggestion, defense counsel pursued the very theory, i.e., self-defense, Garcia identifies on appeal. Through his examination of H.S. and T.S. and his closing argument, defense counsel presented the theory that Garcia was not the aggressor but only displayed a knife *after* he was prevented from leaving the store. Furthermore, the jury was expressly instructed that self-defense was a defense to the charge of assault with a deadly weapon. The record does not show that defense counsel provided ineffective assistance.

Pursuant to *Wende, supra*, 25 Cal.3d at p. 436, we have reviewed the entire record. We find no arguable error that would result in a disposition more favorable to Garcia.

### III.   DISPOSITION

The judgment is affirmed.

8

_____
WILSON, J.

WE CONCUR:


_____
GREENWOOD, P. J.


_____
GROVER, J.


*People v. Garcia*
H051508